IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHARLES ADKINS,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social Security<br>Administration,<br><br>        Defendant. | Civ. No. 6:15-CV-01275<br><br>OPINION AND ORDER |

MCSHANE, Judge:

      Plaintiff Charles Adkins filed his application for Supplemental Security Income (SSI) on December 2, 2011, alleging disability as of December 2, 2005. Tr. 12. After a hearing, the administrative law judge (ALJ) issued a written decision finding Adkins not disabled. Tr. 9–25. When the Appeals Council denied Adkins's request for review, the ALJ's decision became the final decision of the Commissioner. Tr. 1–3.

      Adkins seeks judicial review of the Commissioner's decision. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the ALJ erred in failing to consider listing

1 – OPINION AND ORDER

12.05 and thus failed to conclude Adkins met the step three listing for intellectual disability, the ALJ's decision is REVERSED and this matter is REMANDED for an award of benefits.[1]

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

At step two, the ALJ determined that Adkins had severe impairments of Asperger's disorder, a history of attention-deficit hyperactivity disorder (ADHD), and depressive disorder,

---

[1] Because Adkins clearly meets listing 12.05C, I need not address his other allegations of error.

but the ALJ determined at step three that those impairments did not meet or equal one of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 14-15. Specifically, the ALJ determined Adkins did not meet the criteria of listing 12.02 for organic mental disorders, listing 12.04 for affective disorders, listing 12.06 for anxiety-related disorders, or listing 12.10 for autistic disorder. Adkins argues that he meets listing 12.05 for intellectual disability, which the parties agree the ALJ did not address.

Listing 12.05 sets the standard for establishing an intellectual disability. It states, "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of the impairment before age 22." 20 CFR 404 Subpart P, Appendix 1. In addition to establishing those first two prongs, a claimant must show one of four requirements establishing the severity level of the intellectual disability. *See* 12.05A–D. Here, Adkins meets 12.05C, which requires "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function."

**I. Adkins's intellectual disability meets the severity level under listing 12.05, subpart C.**

The parties agree that Adkins meets the two subpart C requirements. On June 11, 2012, Judith Eckstein, Ph.D. performed an intellectual assessment of Adkins following a referral from Disability Determination Services. Tr. 321–26. Dr. Eckstein conducted WAIS-IV[2] verbal, perceptual reasoning, working memory, processing speed, and full-scale IQ tests. Adkins scored a 67 on the perceptual reasoning, or the "performance IQ," index. Tr. 324. The Commissioner

---

[2] Dr. Eckstein administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV); the fourth—and most up-to-date—of the WAIS test varies somewhat with respect to nomenclature from earlier tests. "Perceptual reasoning" on the WAIS-IV, for example, tests for what was termed "performance IQ" in preceding versions of the test.

agrees that Adkins's performance IQ score of 67 is a valid score meeting the severity requirements of 12.05C.

As noted, in addition to a valid performance IQ of 60 through 70, listing 12.05C requires a "physical or other mental impairment imposing an additional and significant work-related limitation of function." Here, the ALJ at step-two concluded that Adkins's Asperger's Disorder, History of ADHD, and Depressive Disorder qualified as severe impairments. These severe impairments satisfy 12.05C's "physical or other mental impairment imposing an additional and significant work-related limitation of function." *McGrew v. Colvin*, No. 3:13-CV-01909-SI, 2015 WL 1393291, at *5 (D. Or. Mar. 25, 2015) ("ALJ's step two finding of severe impairment satisfies work-related limitation requirement of listing 12.05C.") (citations omitted). Adkins's intellectual disability meets the severity level under subpart C of listing 12.05.

## II. Adkins has demonstrated significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22.

The Commissioner argues that Adkins does not meet the criteria set forth in the introductory paragraph of 12.05. The introductory paragraph states "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of the impairment before age 22." 20 CFR 404 Subpart P, Appendix 1. The Commissioner argues that factual issues remain over whether Adkins has deficits in adaptive functioning. Specifically, the Commissioner argues that because Adkins maintained a high school cumulative GPA of 2.258, "voluntarily" left high school, graduated from the U.S. Job Corps, and obtained his GED, Adkins does not have deficits in adaptive functioning. Def. Br. 5–6. The Commissioner also cites Adkins's ability to work less than full-time due to the unavailability of work as evidence that stands in contrast to any deficit in adaptive functioning.

Def. Br. 5. The Commissioner's arguments misconstrue Adkins's educational and vocational history. The administrative record as a whole compels a finding that Adkins demonstrated significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested before age 22.

Courts have interpreted the Listing 12.05 introductory paragraph as requiring a claimant to demonstrate present deficits in adaptive functioning and that the deficits manifested before the claimant reached age 22. *McGrew*, 2015 WL 1393291 at *6. Adaptive functioning is described as:

> How effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting. . . . Problems in adaptation are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.

*Pedro v. Astrue*, 849 F. Supp.2d 1006, 1011 n.1 (D. Or. 2001) (quoting *Am. Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 42 (4th ed. 2000, text revision)).

The record in this case provides ample evidence demonstrating Adkins's onset of deficits in adaptive functioning prior to age 22. At the hearing, Adkins noted that he had been diagnosed with Asperger's disorder since he was thirteen years old. Tr. 37. Adkins testified that his suffering from Asperger's, ADHD, and depression has been lifelong. Tr. 37–38. Adkins further testified that he was placed in special education classes and received an individual education plan. Tr. 34. Adkins described having a hard time learning in high school and "getting confused," which further hindered his learning. Tr. 33.

Adkins also testified to the extent of his present part-time, low skilled work. Adkins stated that he was simultaneously employed at Safeway as a courtesy clerk, at Liberty Tax as a

5 – OPINION AND ORDER

seasonal sign-holder, and Big Lots as a stocker/cashier. Tr. 45–50, 53–55. Adkins testified that he had yet to start his training at Safeway. Tr. 46. Adkins stated that he was typically scheduled two or three hours per week at Liberty Tax and two or three hours per week at Big Lots. Tr. 49, 54. Adkins described his difficulty concentrating and believes he is labeled a "slow learner" at work. Tr. 39–40, 55. Adkins opined that his being labeled a "slow learner" results in his supervisors scheduling him sparse hours, despite his requests for more work. Tr. 55. Adkins relayed that his supervisors at Big Lots had informed him that his hours were stymied because Adkins was slow at stocking, had a hard time maintaining concentration, and became distracted. Tr. 67–68. It would be one thing if the record contained only Adkins's self-reporting of alleged deficits. But this record also contains unchallenged, objective evidence demonstrating Adkins suffered deficits in adaptive functioning before turning 22.

On September 14, 2009, Gerald King, M.A., performed a Psychoeducational Evaluation on Adkins, who was in the eleventh grade at the time. Tr. 259–64. King's report noted that Adkins was enrolled in special education classes and that Adkins's end of year grades from the prior year fell mostly in the C and D range. Tr. 259–60. King administered the third edition of the Woodcock-Johnson Tests of Achievement, which indicated that Adkins's reading ability was at the eighth-grade level, while his math and language abilities were at the seventh-grade level. Tr. 260, 263. Adkins testified that he later dropped out of high school during his eleventh-grade year. Tr. 32.

During her June 11, 2012, assessment, Dr. Eckstein noted that Adkins—who was 19 years old at the time—had a full scale IQ that "plac[ed] him in the borderline range of intellectual functioning." Tr. 324. Dr. Eckstein suggested that Adkins might have a learning disorder, and explained that his right hemispheric functioning is impaired when compared with

the left, as evidenced by Adkins's "good" verbal skills contrasted by his weak perceptual organization. *Id.* Dr. Eckstein opined that this may result in Adkins "hav[ing] difficulty completing even relatively simple tasks with others misunderstanding his level of functioning based on his verbal skills." *Id.*

The ALJ afforded Dr. Eckstein's opinions "limited weight" because Adkins failed to disclose daily activities that the ALJ felt contradicted Adkins's impairment. Specifically, the ALJ stated that Dr. Eckstein was not aware of Adkins's trips out of state or that he played videogames. Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Stated differently, a disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (9th Cir. 1981)). Some daily activities, however, may be grounds for an adverse credibility determination if a claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the record as a whole does not indicate that Adkins is able to consistently spend a substantial part of his day performing functions transferrable to a work setting. As such, the ALJ's reasons for discounting Dr. Eckstein's opinions are misplaced. For example, the ALJ states Dr. Eckstein was not aware of trips Adkins made "out-of-state for leisure" to Utah and Arizona. Tr. 19. Adkins testified that he traveled to Utah, but only to pursue ultimately unsuccessful vocational training through the U.S. Job Corps. Tr 57. Adkins also testified that he made an attempted out-of-state trip to Arizona, but only after making an impulsive "five-minute

decision" when a California acquaintance requested that Adkins pick her up from California and drive her to Arizona to see her children. Tr. 51–53, 66–67. Adkins testified that during this trip his car broke down in California and he was forced to stay put until his father could pick him up. Tr. 52. If anything, Adkins's out-of-state trips "for leisure" illustrate Adkins's impulsive decision-making and limited judgment, not skills transferrable to the workplace contradicting Dr. Eckstein's opinion, as the ALJ suggests. The ALJ also stated that Dr. Eckstein might not have been aware of Adkins's proclivity for playing the videogame RuneScape. Tr. 18–19. In actuality, Dr. Eckstein appeared to have been fully aware of Adkins's videogame habits, noting that it afforded Adkins "a form of remote social interaction." Tr. 323. Given the record as a whole, the ALJ misconstrued Adkins's participation in everyday activities and erred in affording limited weight to Dr. Eckstein's medical opinion because she "did not appear to be aware" of Adkins's self-reported activities. Further, and for purposes of finding disability under listing 12.05C, Dr. Eckstein's assessment of Adkins's IQ and his impairments was largely based on her administration of the WAIS-IV, which is an objective, standardized, and widely-used IQ test.

      The evidence shows that Adkins experienced significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested before age 22. Circumstantial evidence may be used in demonstrating deficits in adaptive functioning before age 22. *McGrew*, 2015 WL 1393291 at *6. Difficulties in reading and writing, attendance of special education classes and dropping out of school are all included as relevant circumstantial evidence. *Pedro*, 849 F.Supp.2d at 1011–12. Here, Adkins presented all of the listed "relevant circumstantial evidence," and it is clear that those deficits were present well before he turned 22. For example, educational achievement testing shows that in the eleventh grade, Adkins was reading and writing at only a seventh-grade or eighth-grade level, tr. 260, 263, and that he had

8 – OPINION AND ORDER

been enrolled in special education classes "throughout his educational career," tr. 259. Adkins's high school career concluded when he dropped out in the eleventh grade. Tr. 32.

I conclude that Adkins has demonstrated "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Listing 12.05. As found by the ALJ, Adkins suffers from the severe impairments of Asperger's disorder, History of ADHD, and Depressive disorder. Tr. 14. Adkins demonstrated that his limitations initially manifested before age 22. Adkins's valid perceptual reasoning/performance IQ score of 67, combined with his severe impairments of Asperger's disorder, History of ADHD, and Depressive disorder meet the severity requirement of listing 12.05C. I conclude Adkins meets the listing of 12.05 of intellectual disability. The ALJ erred in finding Adkins did not meet listing 12.05 at step three. Meeting a listed impairment ends the five-step inquiry. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Therefore, Adkins is "presumed unable to work and is awarded benefits without a determination of whether he actually can perform his own prior work or other work." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

Because the record is complete and demonstrates Adkins meets listing 12.05, this matter is remanded for an award of benefits. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

## CONCLUSION

The Commissioner's decision is REVERSED. This matter is REMANDED for an award of benefits.

IT IS SO ORDERED.

DATED this 11th day of October, 2016.

                                                        Michael McShane  
                                                  United State District Judge